UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| COLBERT RITTGERS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-94 |
| | § | |
| UNITED STATES OF AMERICA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is United States of America's (the Government's) "Motion to Dismiss Complaint for Lack of Jurisdiction Under Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) or In the Alternative Motion for Summary Judgment" (D.E. 10), along with Plaintiff, Colbert Rittgers's (Rittgers's) Response (D.E. 14) and the Government's Reply (D.E. 15). For the reasons set out below, the Court declines to convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56. The Rule 12 motion to dismiss is GRANTED.

### A. Rittgers's Claims and the Arguments for Dismissal

Rittgers filed suit against the Government and the Honorable John McHugh, Secretary, Department of the Army (Army) regarding issues related to his employment at the Corpus Christi Army Depot (CCAD). Rittgers complains that, while conducting an investigation of the matter, the Government disclosed to Rittgers's co-workers private information related to criminal accusations against Rittger involving child pornography found on his CCAD-allocated computer space. D.E. 3. He also complains of the Army's

use of his personal information (polygraph test results) and criminal investigation record without his effective consent in CCAD employment-related administrative actions taken against him.  The claim contends that the Government and Army set out on a course to disclose private facts about Rittgers to the public.  *Id*.

Ultimately, the child pornography criminal charges against Rittgers were dismissed without prosecution, citing a lack of sufficient evidence to proceed.  However, because his private information was disclosed, Rittgers claims to have suffered mental and emotional distress along with lost or diminished financial opportunities.  He sues for violation of the Privacy Act of 1974, 5 U.S.C. § 552a, and under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2679(a), for invasion of privacy-false light, defamation-plus or stigma-plus, abuse of process, and intentional infliction of emotional distress.  D.E. 3.

The Government[1] filed its motion to dismiss (D.E. 10), arguing that this Court does not have subject matter jurisdiction or that Rittgers has failed to state a claim upon which relief may be granted because:

---

[1]   Rittgers has sued the Government and Army separately, yet the Government contends that it is the only proper Defendant, citing 28 U.S.C. § 1346(b)(1).  D.E. 10, p. 1 n.1.  The Government brings its motion to dismiss in the name of the United States of America without joinder of the Army.  *Id*.  While Rittgers does not address this representation, the Court notes that the Privacy Act's civil remedies provision is written in terms of remedies available against both the agency and the United States.  5 U.S.C. § 552a(g).  Injunctive relief is expressly available against the agency, but damages may be awarded against the United States.  *Id*.  Rittgers seeks both equitable relief and damages.

The Court notes that today's decision on the law eliminates all claims for relief under the theories Rittgers pled.  Any decision, if not vicariously applicable to the Army through the Government's representation, may still govern those claims pursuant to the law of the case doctrine.  The law of the case doctrine states that when a court decides a rule of law, that decision should continue to govern the same issue in subsequent proceedings in the same case.  *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (quoting *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir.1999) and *Arizona v. California*, 460 U.S. 605, 618 (1983)).  The Army may file any motion necessary to address the claims made against it.

- Rittgers did not file his claims within the statute of limitations of the Privacy Act;

- Rittgers did not file his claims within the statute of limitations of the FTCA;

- FTCA exceptions require dismissal based on sovereign immunity for claims arising out of libel, or slander, such as invasion of privacy by false light, defamation-plus, stigma-plus, and intentional infliction of emotional distress; and/or

- Rittgers's FTCA claims are preempted by the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8116(c) et seq.

D.E. 10.

### B.   The Standards of Review

The Supreme Court has admonished courts to be linguistically precise when dismissing claims in order to be clear whether the dismissal is truly one for lack of jurisdiction or if it simply involves a fatal claim-processing defect. *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region*, 558 U.S. 67, 81-82 (2009).  Defects in claims-processing, while they may be violations of mandatory prerequisites for relief, do not necessarily implicate a court's "adjudicatory domain"—its jurisdiction.  *Id.*  Because the jurisdictional classification brings with it a difference in the order of decision, the standard of review, and sometimes the prejudicial effect of any decision, the Court first determines which of the Government's claims are jurisdictional.

The motion paints the bases for dismissal with a broad brush, seeking dismissal on each basis under Rule 12(b)(1) for lack of jurisdiction or alternatively under Rule

12(b)(6) for failure to state a claim upon which relief may be granted, without concern for which route the decisional process must take.  For the reasons set out below, the Court finds that only the FTCA exception and FECA preemption claims are jurisdictional.

### 1.   Rule 12(b)(1) Challenge to Jurisdiction Standard of Review

When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001), *cert. denied sub nom.*, *Cloud v. United States*, 536 U.S. 960 (2002).  Federal Rule of Civil Procedure 12(b)(1) requires dismissal for lack of subject matter jurisdiction if the court lacks statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The burden of proof is on the party asserting jurisdiction—Rittgers, here. *Ramming*, 281 F.3d at 161.  In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact that may be in dispute.  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

### 2.   Rule 12(b)(6) Failure to State a Claim Standard of Review

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims. *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 558 (2007).    In a Rule 12(b)(6) context, the burden of proof is on the party

challenging the claim—the Government, here.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

of the claim showing that the pleader is entitled to relief."  Furthermore, "Pleadings must

be construed so as to do justice."  Rule 8(e).  The requirement that the pleader show that

he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation

of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above

the level of mere speculation.  *Twombly*, 550 U.S. at 555.  Those factual allegations must

then be taken as true, even if doubtful.  *Id*.  In other words, the pleader must make

allegations that take the claim from conclusory to factual and beyond possible to

plausible.  *Id*., 550 U.S. at 557.  The *Twombly* court stated, "[W]e do not require

heightened fact pleading of specifics, but only enough facts to state a claim to relief that

is plausible on its face."  550 U.S. at 570.

The Supreme Court, elaborating on *Twombly*, stated, "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id*.  In dismissing the claim in *Iqbal*, the Court stated, "It is

the conclusory nature of respondent's allegations, rather than their extravagantly fanciful

nature, that disentitles them to the presumption of truth."  556 U.S. at 681.

A motion to dismiss for failure to state a claim upon which relief can be granted can be based not only on a plaintiff's claims but on matters that support an affirmative defense, such as limitations.   Even if some allegations support a claim, if other allegations negate the claim on its face, then the pleading does not survive the 12(b)(6) review.

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, *see* Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

*Jones v. Bock*, 549 U.S. 199, 215 (2007).

In a Federal Rule of Civil Procedure 12(b)(6) context, the court construes the facts alleged in the complaint as true.   The court may also consider: (a) documents attached to the complaint or identified as central to the claims made therein; (b) documents attached to the motion to dismiss that are referenced in the complaint; and (c) documents that are subject to judicial notice as public record.  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### C. The Claims

#### 1. Violation of the Privacy Act

The Privacy Act, 5 U.S.C. § 552a, "'safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used.'" *Jacobs v. Nat'l Drug Intelligence Center*, 423 F.3d 512, 515 (5th Cir. 2005) (quoting *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C.Cir.1996)).  The Act provides four causes of action: (1) for an agency's failure to amend an individual's records pursuant to his request; (2) for an agency's denial of access to an individual's records; (3) for an agency's failure to maintain an individual's records with accuracy, relevance, timeliness, and completeness; and (4) for an agency's failure to comply with other Privacy Act provisions, which has "an adverse effect on the individual." 5 U.S.C. § 552a(g)(1)(A)-(D).

Rittgers's Privacy Act claim falls under the fourth category in that it complains of the failure to maintain records in confidence, resulting in adverse employment decisions and reputational and consequent financial harm.  Additionally, while listed separately from the Privacy Act in his complaint, Rittgers's invasion of privacy-false light allegations may be construed as a claim under the Privacy Act.  *Fares v. United States Immigration & Naturalization Service*, 50 F.3d 6, *2 (4th Cir. March 20, 1995) (general complaint that unauthorized persons viewed immigration file was a claim under the Privacy Act).

**a.  The Privacy Act's Limitations Provision is Not Jurisdictional**

There is a large body of case law, including at least one Fifth Circuit opinion holding that the Privacy Act's limitations provision is jurisdictional.  *Smith v. United States*, 142 F. App'x 209, 210 (5th Cir. 2005) (per curiam).  The Seventh Circuit wrote, "The statutory time limitation . . . is unquestionably an integral condition of the sovereign's consent to be sued under the Privacy Act," thus depriving the court of subject matter jurisdiction.  *Diliberti v. United States*, 817 F.2d 1259, 1262 (7th Cir. 1987) (dismissing for lack of jurisdiction on the limitations issue instead of the exhaustion of remedies issue that the district court had relied upon).[2]

However, the Supreme Court initiated a change in analysis of such issues in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 94-96 (1990).  The Court wrote that the government should enjoy no better rights with respect to limitations than suits between private parties.  Accordingly, the Court held that federal statutes of limitations for claims against the United States were to include a presumption in favor of equitable tolling, thus rendering them non-jurisdictional.  *Id*.  The Court rejected the argument that the role of limitations in the waiver of sovereign immunity entitled the government to more favorable treatment.  *Id*., pp. 95-96.

Thus the Supreme Court sought to establish a new general rule rather than address cases on an "ad hoc" basis.  *Id*., p. 95.  At least two circuit courts have since followed

---

[2]  *See also, Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002) (citing *Diliberti* and holding that limitations is jurisdictional as it is a condition for the government's waiver of sovereign immunity); *Weber v. Henderson*, 33 F. App'x 610, 611 (3d Cir. 2002) (Privacy Act's limitations provision is jurisdictional); *Doe v. Nat'l Sec. Agency*, 165 F.3d 17 (4th Cir. 1998) (citing *Diliberti* with approval); *Caraballo-Sandoval v. Bureau of Prisons*, No. 96-5099, 1997 WL 195525, *1 (D.C. Cir. Mar. 31, 1997); *Williams v. Reno*, 93 F.3d 986 (D.C. Cir. 1996) (Privacy Act's limitations provision is jurisdictional).

*Irwin's* directive and have held that the Privacy Act's limitations provision is subject to

equitable tolling and thus is non-jurisdictional. *Rouse v. United States Dep't of State*, 567

F.3d 408, 417 (9th Cir. 2009); *Chung v. Dep't of Justice*, 333 F.3d 273, 277–78 (D.C. Cir.

2003) (noting that the Privacy Act provides for specified instances of tolling, thus leaving

room for equitable tolling).

While the Fifth Circuit's per curiam opinion in *Smith* (holding that the limitations

issue is jurisdictional) was decided after *Irwin*, this Court notes that it was an unpublished

opinion, and also notes that the Fifth Circuit's post-*Irwin* holding that the FTCA

limitations provision was jurisdictional has been abrogated by the Supreme Court.

*United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015).  This Court, following

*Irwin*, holds that the Government's limitations argument is non-jurisdictional and is

subject to decision only under Rule 12(b)(6).

### b.  Limitations Bars Rittgers's Privacy Act Claims

Rittgers was required to bring his Privacy Act claim within two years of the

accrual of the claim or, if a misrepresentation materially obscured the claim, within two

years after discovery of the misrepresentation:

> An action to enforce any liability created under this section
> may be brought in the district court of the United States in the
> district in which the complainant resides, or has his principal
> place of business, or in which the agency records are situated,
> or in the District of Columbia, without regard to the amount
> in controversy, within two years from the date on which the
> cause of action arises, except that where an agency has
> materially and willfully misrepresented any information
> required under this section to be disclosed to an individual
> and the information so misrepresented is material to
> establishment of the liability of the agency to the individual

> under this section, the action may be brought at any time
> within two years after discovery by the individual of the
> misrepresentation.

5 U.S.C. § 552a(g)(5). Reading his pleading liberally, Rittgers appears to complain both that his personal information was wrongly disseminated and that, through their forms, the United States of America Criminal Investigation Division (USACID) Special Agents failed to include in the "purposes" section of the consent form a warning that his personal information would be disseminated to CCAD as his employer, thus making a "misrepresentation material to the establishment of liability of the agency." So in evaluating the limitations argument, the Court considers both the time of the offending actions and the time Rittgers discovered them.

This action was filed on February 20, 2015. D.E. 1. Therefore, Rittgers must be able to show that his claim arose, or that he discovered his claim, on or after February 20, 2013. Rittgers's pleading contains a timeline of events relevant to the limitations determination, summarized as follows:

- September 15, 2009: USACID Special Agent Mary E. Russell interviewed Rittgers, thereby improperly obtaining his personal information and failing to inform him of the principal purpose for which the information was requested. D.E. 1, pp. 3-4.

- October 22, 2009: USACID Special Agent Matthew P. Titus conducted a polygraph test on Rittgers without proper authority for obtaining his personal information and without properly informing Rittgers of the purpose for which the information would be used. *Id*., p. 7.

- May 2010: CCAD notified Rittgers that his access to information technology network was suspended. *Id*., p. 4.

- August 2010: Rittgers's supervisor placed him on administrative leave based on the suspension of network access. *Id*.

- November 19, 2010:  His supervisor gave Rittgers notice of a Proposed Indefinite Suspension because there was reason to believe the child pornography complaint involving the use of the Government's computers. *Id.*

- December 2, 2010:  Rittgers was given the written decision that he was indefinitely suspended effective December 15, 2010. *Id.*, pp. 4-5.

- April 19, 2012:  The Administrative Judge for the Merit Systems Protection Board (MSPB) issued an initial decision discussing the use of the child pornography accusation as a basis for Rittgers's Indefinite Suspension. *Id.*, p. 5.

- May 15, 2012:  Rittgers was arrested on a charge of possession of child pornography. *Id.*, p. 6.

- August 15, 2012:  Rittgers received and reviewed the entire USACID Report of Investigation on the child pornography accusation.  At that time, Rittgers learned that USACID had policies of nondisclosure that the Special Agents had allegedly violated when sharing their investigative information with CCAD representatives. *Id.*, pp. 6-7; D.E. 14, p. 9.

Rittgers's allegations establish that the acts of dissemination of the information of which he complains took place prior to February 20, 2013.  And even if the Court were to ignore the notice of that dissemination that should have been apparent to Rittgers from the administrative actions taken in connection with his employment, Rittgers admits that he knew of all of the facts relevant to making his claim by August 15, 2012.  Yet Rittgers waited more than two years and six months to file his complaint—six months too long.

Rittgers contends that the additional six months can be excused because he filed an administrative action under the FTCA and that administrative proceedings that ended his government employment were not completed until December 26, 2013.  D.E. 14, p. 9. Rittgers's response fails to supply any specificity regarding those administrative

proceedings and is unsupported by any authority that the limitations period for Privacy Act complaints may be tolled in this manner.

As the Government points out, the Privacy Act does not contain a provision requiring the exhaustion of any administrative remedies before suit for damages may be filed.  5 U.S.C. § 552a(g)(4), (5).  A number of cases have pointed out that it is only when a claimant seeks to correct or amend a record, and not when the claimant sues for damages, that there is an administrative exhaustion requirement.  *See, e.g., Quinn v. Stone*, 978 F.2d 126, 137 & n. 22 (3d Cir. 1992); *Diederich v. Department of Army*, 878 F.2d 646, 647-48 (2d Cir. 1989) (per curiam); *Hubbard v. United States E.P.A. Administrator*, 809 F.2d 1, 4 (D.C. Cir. 1986); *Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir. 1986); *Nagel v. United States Dep't of Health, Education & Welfare*, 725 F.2d 1438, 1441 (D.C. Cir. 1984).  Thus there is no basis for tolling the limitations period while Rittgers pursued his administrative claim under other statutes.

Rittgers waited six months too long to file his Privacy Act claims and he has failed to supply a legal basis for excusing his delay.  Rittgers's Privacy Act claims are barred by limitations.  The Court GRANTS the motion under Rule 12(b)(6) and DISMISSES the Privacy Act claims brought against the United States.

### 2.  Tort Claims Under the FTCA

Rittgers brings five state law claims against the Government under the FTCA: invasion of privacy-false light, stigma-plus, defamation-plus, abuse of process, and intentional infliction of emotional distress.  The FTCA provides the exclusive remedy for

actions against the United States sounding in tort and seeking money damages.  28 U.S.C. § 2679(b)(1); *United States v. Smith*, 499 U.S. 160, 162 (1991).

### a.  Sovereign Immunity:  FTCA's Exception for Defamation Claims

There are thirteen specified exceptions to FTCA § 1346(b), which preclude government liability for certain intentional torts.  *See* 28 U.S.C. § 2680(h).  If a claim falls within the scope of one of these exceptions, the district court lacks subject matter jurisdiction.  *See Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).  The Court evaluates the Government's challenge to claims for invasion of privacy by false light, defamation-plus, stigma-plus, and intentional infliction of emotional distress pursuant to Rule 12(b)(1).

It is well-established that the FTCA is a limited waiver of sovereign immunity. *E.g.*, *United States v. Orleans*, 425 U.S. 807, 813 (1976).  And the provisions of 28 U.S.C. § 2680(h) state exceptions to that waiver of sovereign immunity, which must be strictly construed in favor of the government.  *Atorie Air, Inc. v. Federal Aviation Admin.*, 942 F.2d 954, 958 (5th Cir. 1991).  Thus the United States has sovereign immunity and the courts do not have jurisdiction with respect to any claim that can be construed to fall within one of the exceptions of § 2680(h).

The question before the Court is whether Rittgers's false light, stigma-plus, defamation-plus, and intentional infliction of emotional distress claims may be said to "arise out of" libel or slander theories such that they are excepted from the FTCA waiver of sovereign immunity.

> To determine whether a claim is one "arising out of" any of these enumerated torts, we focus on the conduct upon which the plaintiff's claim is based.  If the conduct upon which a claim is based constitutes a claim "arising out of" any one of the torts listed in section 2680(h), then the federal courts have no jurisdiction to hear that claim.  Even if a plaintiff styles a claim so that it is not one that is enumerated in section 2680(h), the plaintiff's claim is still barred "when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action."  Thus, the FTCA bars a claim based on conduct that constitutes a tort listed in section 2680(h), even though that conduct may also constitute another tort not listed in section 2680(h).

*Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (citations omitted).

A plaintiff cannot evade the jurisdictional limitations of § 2680(h) by artful pleading that assigns some other label to what is, in essence, a libel or slander action. *E.g., Garcia v. United States*, 776 F.2d 116, 118 (5th Cir. 1985) (assault and battery exception cannot be circumvented by labeling his claim as one for "negligence").  Each of Rittgers's challenged theories has, at its core, a reputational injury that could be posed as a libel or slander claim.   Each arises out of the same conduct—publication of information related to the child pornography accusations.

Defamation-plus and stigma-plus are theories complaining of injuries to Rittgers's reputation that have commercial consequences.  *See generally*, *Phillips v. Vandygriff*, 724 F.2d 490, 492 (5th Cir. 1984) (citing *Paul v. Davis*, 424 U.S. 693 (1976) describing the nature of stigma-plus); *Crowe v. County of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010) (defamation-plus).  Likewise, invasion of privacy-false light and intentional infliction of emotional distress involve reputational harm.  *Doe v. United States*, 83 F. Supp. 2d 833,

839-40 (S.D. Tex. 2000); *Bosco v. United States Army Corps of Engineers*, 611 F. Supp. 449, 453 (N.D. Tex. 1985).

The Government has not waived its sovereign immunity as to these four theories because, in the context of this case, they each arise out of libel or slander and thus fall within the § 2680(h) exception.  This Court does not have jurisdiction to hear these claims and they are DISMISSED under Rule 12(b)(1).  However, the Government has not challenged Rittgers's claims for abuse of process under any exception to the FTCA.

### b.  FECA Preemption

The Government does not address the abuse of process claim except to the extent that it is included in its global assertion that all of Rittgers's tort claims are preempted by FECA.  FECA provides compensation for personal injuries that a federal employee "sustained while in the performance of his duty." 5 U.S.C. § 8102(a).  "FECA functions as a federal workers' compensation act and provides a substitute for, not supplement to, recovery."  *Bennett v. Barnett*, 210 F.3d 272, 276 (5th Cir.2000).  "In enacting [FECA], Congress adopted the principal compromise—the 'quid pro quo'—commonly associated with workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government."  *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983).

FECA provides an exclusive administrative remedy for a federal employee's personal injuries "sustained while in the performance of his duty."  5 U.S.C. § 8102(a); *White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998).  Federal district courts only

have subject matter jurisdiction over disputes between the United States and one of its

employees regarding the personal injury of the employee if it is certain that the Secretary

of Labor would find no FECA coverage. *See White*, 143 F.3d at 234. If there is a

substantial question regarding whether the injury is compensable under FECA, the suit

must be stayed or dismissed to allow the employee to pursue his claims under FECA. *Id.*

The Fifth Circuit has described FECA's preemptive nature as follows:

> When an employee's emotional disability results from his
> emotional reaction to his regularly or specially assigned work
> duties, or to a requirement imposed by the employment, the
> disability comes within the coverage of the FECA. An
> employee's emotional reaction to administrative actions or
> personnel matters taken by the employing establishment is
> not covered under the Act, as such matters pertain to
> procedures and requirements of the employer and do not bear
> a direct relation to the work required of the employee.
> However, if the factual circumstances surrounding the
> administrative or personnel action established error or abuse
> by the employing establishment, the disability is compensable
> under the FECA.

*Schwartz v. Occupational Safety & Health Review Comm'n*, 58 F. App'x 595, *1 (5th Cir.

Jan. 14, 2003) (per curiam) (citations omitted). Because FECA presumptively deprives

this Court of jurisdiction to proceed over claims unless it is conclusively shown that the

claims are not within its scope, the question of FECA preemption is jurisdictional under

Rule 12(b)(1) with the burden of proof on Rittgers as claimant.[3]

---

[3]  The parties did not brief this issue or examine the interplay of jurisdiction and preemption as it affects the burden of proof. The Court did not find any definitive cases in its own research. However, if the test was whether it was "arguable" that the federal agency had jurisdiction, preemption would be an affirmative defense, subject to waiver and with the burden of proof on the defendant. In that event, it would not be jurisdictional. *See generally, Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 394-95 (1986) (addressing preemption under the National Labor Relations Act).

The question is whether Rittgers's claim is within FECA's scope, providing a remedy for "personal injury sustained while in the performance of his duty."  5 U.S.C.A. § 8102.  Rittgers suggests that his injury was not sustained "during the performance of his duties" as an Aircraft Mechanical Parts Repairer because the Government's alleged wrongdoing took place while he was suspended and off premises, citing *Bailey v. United States*, 451 F.2d 963, 965 (5th Cir. 1971).

*Bailey* involved physical injuries to a civilian employee who was injured in a traffic accident on Government premises when driving home from work.  The *Bailey* court rejected consideration of the "fortuitous" happenstance that the motor vehicle collision took place on Government premises and held that the Secretary of Labor would not provide FECA benefits in such a case because the claimant was not injured while working.  The Fifth Circuit has since substantially receded from the *Bailey* holding, writing that the premises upon which the injury takes place is one factor of many in the totality of the circumstances to be considered.  *White v. United States*, 143 F.3d 232, 238 (5th Cir. 1998).  More importantly, Rittgers's claim is not analogous to one arising from a motor vehicle collision as in *Bailey*.

As demonstrated in *White*, the question is whether there is a "sufficient nexus between the injury and the employment to sustain FECA coverage of the employee's injuries." *White*, 143 F.3d at 237.  Under such a test, there is a significant nexus between the injury and the Government employment at issue here:

- The Government computer on which child pornography was allegedly found was used by Rittgers, incident to his employment;

- The discovery of the child pornography and the identification of it as being on part of the system allocated to Rittgers took place pursuant to Government maintenance policies for systems used by employees;

- The Government's suspension of Rittgers was pursuant to its interpretation of policies applicable to its employees;

- The assignment of Government investigators was pursuant to Government interpretation of policies applicable to its employees;

- The investigation was, in part, to determine whether Rittgers's employment should be terminated;

- The persons who received information regarding the charges against Rittgers, triggering his alleged mental suffering and injury from abuse of process, were co-workers or supervisors, involved because of their relationship to Rittgers's work and continued employment.

The alleged injury is closely related to Rittgers's employment.  It is not necessary that the injury relate to his actual mechanical repairman function.  It is enough that it relate to his computer access incident to his status of employment as a repairman.  The fact that the investigation and allegedly improper dissemination of information took place while Rittgers was off premises is of no moment.  His injury is not related to his location.

While the Government admits that there is some question whether the type of injury Rittgers claims—emotional distress—is compensable under FECA, Rittgers has failed to sustain his burden of proof to demonstrate that FECA does not cover this claim. Therefore, this Court may not maintain jurisdiction. *See Bennett v. Barnet*, 210 F.3d 272, 277 (5th Cir. 2000) (where there is a substantial question of coverage and the emotional

distress injury has not been submitted to the Secretary of Labor, the plaintiff has not demonstrated jurisdiction).

For these reasons, the Court finds that Rittgers's FTCA claim of abuse of process is preempted by FECA and this Court does not have jurisdiction.

### c.  The FTCA's Limitations Period

The Supreme Court has very recently held that the FTCA's statute of limitations is not jurisdictional.  *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015). Because this argument is subject to evaluation only under Rule 12(b)(6), and the foregoing determination of FECA preemption eliminates the Court's jurisdiction over the remaining FTCA claim, the limitations issue is moot and the Court does not reach it.

### CONCLUSION

For the reasons set out above, the Court GRANTS the Government's motion to dismiss and notes that the Army did not join the motion and no stipulation has been filed by which the Court may treat them as identical for the purposes of these claims.  Thus no ruling is made as to the Army at this time.

Under Federal Rule of Civil Procedure 12(b)(1), the Court DISMISSES the claims for damages asserted against the Government under the Federal Tort Claims Act for invasion of privacy-false light, stigma-plus, defamation-plus, and intentional infliction of emotional distress as excepted from the Government's waiver of sovereign immunity. Also under Rule 12(b)(1), the Court DISMISSES the claim for damages for abuse of process against the Government as preempted by FECA.  Under Rule 12(b)(6), the Court

DISMISSES the claims asserted against the Government for damages pursuant to the Privacy Act.

ORDERED this 15th day of September, 2015.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE